OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 12, 2002

Mr. Randall S. James
Banking Commissioner
Texas Department of Banking
2601 North Lamar Boulevard
Austin, Texas 78705-4294

Opinion No. JC-0477

Re: Applicability of section 154.155(d) of the Finance Code to insurance-funded, prepaid funeral benefits contracts (RQ-0434-JC)

Dear Mr. James:

During the Seventy-seventh Legislative Session, the Texas Legislature amended section 154.155 of the Finance Code, which governs refunds available to consumers who cancel prepaid funeral benefits contracts. Prior to its amendment, section 154.155 provided that, except as provided therein, purchasers of prepaid funeral benefits contracts were entitled to receive only the actual amount paid by the purchaser. The amendment to section 154.155 increased the amount of such a refund to include "half of all earnings attributable to that money." See TEX. FIN. CODE ANN. § 154.155(d) (Vernon Supp. 2002). You ask whether the amendatory language applies to insurance-funded prepaid funeral benefits contracts as well as to trust-funded prepaid funeral benefits contracts, or only to trust-funded prepaid funeral benefits contracts. We conclude that the amendment applies only to trust-funded prepaid funeral benefits contracts.

Prepaid funeral benefits contracts in Texas are governed by chapter 154 of the Finance Code. Any person seeking to sell or accept money for prepaid funeral benefits or solicit an individual's designation of prepaid funeral benefits to be provided out of a fund, investment, security, or contract, including a contract or policy of insurance authorized and sold under a license issued by the Texas Department of Insurance, must hold a permit to do so issued by the Texas Department of Banking. See id. § 154.101 (Vernon 1998). Prepaid funeral benefits contracts are paid for through the purchase or creation of a "fund, investment, security, or contract, including an insurance policy," with the fund created by an insurance policy approved by the Texas Department of Insurance regulated under subchapter E of chapter 154, a trust created under and regulated by subchapter F of chapter 154, or a "fund, investment, security, or contract" approved by the Texas Department of Banking. Id. § 154.201.

Contracts paid for by the creation of a trust involve a purchaser entering into a contract with a seller of funeral services or merchandise, with the payments to the seller deposited into a trust created for that purpose. See generally id. §§ 154.251-.264 (Vernon 1998 & Supp. 2002) (chapter 154, subchapter F). Money deposited into such trusts may be invested only as provided by sections 154.258 and 154.259, of subchapter F of the Finance Code, in accordance with an approved

investment plan. *See id.* § 154.257 (Vernon Supp. 2002). Contracts paid for by the purchase of an insurance policy, on the other hand, involve two contracts—the first between the purchaser and the seller of funeral services and merchandise that must be executed in conjunction with the application for the issuance of the second, an insurance policy typically between the same purchaser and an insurance company, with the seller of the funeral services and merchandise named as the beneficiary of the insurance contract. *See id.* § 154.202 (Vernon 1998). Money received for prepaid funeral benefits must be administered as prescribed by section 154.155 of the Finance Code and subchapters E and F of the Finance Code, as applicable. *See id.* § 154.159.

Section 154.155 of the Finance Code, which governs cancellation of contracts for prepaid funeral benefits and the section about which you inquire, provided the following prior to its amendment by the Seventy-seventh Legislature:

(a) A purchaser of a prepaid funeral benefits contract may cancel the contract before maturity by giving written notice of cancellation to the seller on forms prescribed by the department. The seller shall maintain copies of the cancellation forms for examination by the department.

(b) Not later than the 30th day after the date of the cancellation notice, the seller shall withdraw and pay to the purchaser money in the depository being held for the purchaser's use and benefit.

(c) The purchaser or seller may not make a partial cancellation or withdrawal.

(d) The purchaser is entitled to receive only the actual amount paid by the purchaser less the amount permitted to be retained as provided by Section 154.252, except as provided by Subsection (e) and by Sections 154.205 and 154.254.[1]

---

[1]Section 154.205 of the Finance Code governs cancellation of insurance-funded prepaid funeral benefits contracts during the first year of the contract and provides:

A purchaser of an insurance-funded prepaid funeral benefits contract who cancels the contract during the first year of the contract when payments required under the contract are current is entitled to receive the cash surrender value of the policy.

TEX. FIN. CODE ANN. § 154.205 (Vernon 1998). Section 154.254 of the Finance Code governs cancellation of trust-funded prepaid funeral benefits contracts during the first year of the contract and provides:

A purchaser of a trust-funded prepaid funeral benefits contract who cancels the contract during the first year of the contract when payments required under the

(continued...)

> (e) A purchaser who cancels a contract on the solicitation of the seller is entitled to withdraw all money paid to the seller and all earnings attributable to that money. If the money is used to purchase a new prepaid funeral benefits contract under a solicitation by the seller, the new contract must protect the purchaser to an extent equal to or greater than that provided by the original contract, as determined by the department. Under the new contract, the cost to the purchaser of the same or substantially the same services or merchandise may not be greater than that provided by the canceled contract.

Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, sec. 154.155, 1997 Tex. Gen. Laws 3091, 3392 (footnote added). Section 154.155 was amended by the Seventy-seventh Legislature by amending subsection (d), which now provides:

> (d) The purchaser is entitled to receive the actual amount paid by the purchaser *and half of all earnings attributable to that money*, less the amount permitted to be retained as provided by Section 154.252, except as provided by Subsection (e) and by Sections 154.205 and 154.254.

TEX. FIN. CODE ANN. § 154.155(d) (Vernon Supp. 2002) (as amended by Senate Bill 314, Act of May 24, 2001, 77th Leg., R.S., ch. 699, § 7, 2001 Tex. Sess. Law Serv. 1254, 1256 (emphasis added). In your letter requesting an opinion from this office you state:

> The amendment plainly applies to a trust-funded prepaid funeral benefits contract. I request your opinion regarding whether the enhanced refund provision also applies to an insurance-funded prepaid funeral benefits contract.[2]

For two reasons we conclude that the amendatory language of subsection (d) properly should be construed to apply only to trust-funded contracts. First, the term "earnings" is defined at section

---

[1](...continued)
contract are current is entitled to receive, regardless of the amount held in trust, the greater of:

(1)   90 percent of the actual amount paid by the purchaser; or

(2)   the amount deposited in trust with respect to the purchaser's contract.

*Id.* § 154.254.

[2]Letter from Randall S. James, Banking Commissioner of Texas, to Honorable John Cornyn, Texas Attorney General, at 1 (Sept. 13, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

154.002 of the Finance Code clearly to apply only to earnings of a trust-funded contract. Section 154.002(4) provides:

> "Earnings" means the amount in an account in excess of the amount paid by the purchaser of a prepaid funeral benefits contract that is deposited in the account as provided by Section 154.253, including accrued interest, accrued income, and enhanced or increased value.

TEX. FIN. CODE ANN. § 154.002(4) (Vernon Supp. 2002). Section 154.253, which is set forth in subchapter F governing trust-funded prepaid funeral benefits, requires money paid pursuant to a trust-funded contract to be deposited in a financial institution in an interest-bearing account or in trust with a financial institution to be invested by the financial institution as trustee. *See id.* 154.253(a). Thus, half of the "earnings" to which persons are entitled are earnings of trust-funded contracts.

Second, a construction limiting the amendatory language to trust-funded prepaid funeral benefits contracts is consistent with the regulatory scheme adopted by the legislature because the legislature has provided for a form of refund for cancelled life insurance policies or annuities elsewhere. As we noted earlier, insurance-funded prepaid funeral benefits contracts actually involve two contracts—a contract for funeral services and merchandise between a purchase and a seller and an insurance contract between a purchaser and an insurance company with the seller named as a beneficiary. While certain aspects of the contractual relationships are governed by subchapter E of chapter 154 (and section 154.155), the insurance contract itself must be "approved by the Texas Department of Insurance and issued by an insurance company licensed by the Texas Department of Insurance." *Id.* § 154.201(1) (Vernon 1998). Articles 3.44a and 3.44b of the Insurance Code, which govern life insurance contracts and annuities, respectively, require that all such contracts for insurance contain, *inter alia*, provisions requiring the company to grant certain benefits, including under certain circumstances, the cash surrender value of the policy in event of default (or, presumably, cancellation). *See* TEX. INS. CODE ANN. arts. 3.44a, 3.44b (Vernon 1981 & Supp. 2002).

Taken together then, a purchaser who cancels a trust-funded prepaid funeral benefits contract during the contract's first year is entitled to a refund in an amount based upon the amount paid by the purchaser into the trust. *See* TEX. FIN. CODE ANN. § 154.254 (Vernon 1998). If a purchaser cancels a trust-funded prepaid funeral benefits contract after the contract's first year, the purchaser is entitled to a refund in an amount equal to his payments and half of the earnings generated by those payments. *See id.* § 154.155(d) (Vernon Supp. 2002). A purchaser who cancels an insurance-funded prepaid funeral benefits contract during the contract's first year is entitled to a refund in an amount based upon the cash surrender value of that insurance contract. *See id.* § 154.205 (Vernon 1998). If a purchaser cancels an insurance-funded prepaid funeral benefits contract after the insurance policy's or annuity's first year, the purchaser is entitled to a refund based on a "nonforfeiture benefit" or the cash surrender value of the contract as provided by articles 3.44a and 3.44b of the Insurance Code. Therefore, we conclude that the amendatory language to subsection (d) of section

154.155 of the Finance Code applies only to trust-funded prepaid funeral benefits contracts; it does not apply to insurance-funded prepaid funeral benefits contracts.

Our conclusion comports with the Sunset Advisory Commission report prepared in anticipation of the Seventy-seventh Legislature. A careful reading of the staff report prepared by the Sunset Advisory Commission regarding the Texas Funeral Commission, several of whose recommendations were included in the "sunset bill" for the Texas Department of Banking, Senate Bill 314, supports limiting the application of the amendatory language of subsection (d) to trust-funded contracts. Both the Texas Department of Banking and the Texas Funeral Commission were subject to the "sunset review" process prior to the 2001 legislative session. The Sunset Advisory Commission for the Texas Funeral Commission addressed problems it identified with the statutes governing, *inter alia*, prepaid funeral benefits contracts. The staff report recognized the distinction between trust-funded and insurance-funded contracts. The staff did not expressly distinguish between the two in its text recommending statutory amendments regarding refunds of earnings, which was included in Senate Bill 314 as amendatory language to subsection (d). However, a close reading of the text clearly indicates that the staff was referring in its recommendations to trust-funded contracts only:

> **Problem: Consumers who cancel their prepaid funeral contracts do not receive reasonable refunds.**
>
> - Texas statute authorizes contract sellers to take 10 percent of the consumer's principal to cover selling expenses, service costs, and general overhead. Consumers who cancel their prepaid funeral contract receive 90 percent of their original payment. In addition, consumers who cancel their contracts are not entitled by law to receive the interest that their funds have earned. That money remains with the contract seller.

SUNSET ADVISORY COMM'N, STAFF REPORT: TEX. FUNERAL SERVICES COMM'N, at 65 (2000). The statutory provisions referred to apply only to trust-funded contracts; they do not apply to insurance-funded contracts. *See* TEX. FIN. CODE ANN. §§ 154.205, .254 (Vernon 1998). The staff report describes the income tax consequences of Texas law in this area:

> The IRS requires trust-funded contract holders to declare their interest income on their Income Tax Return. Consequently, funeral contract purchasers are held liable for all interest and capital gains accrued by trust-funded investments. Recently the IRS has begun to allow funeral homes to declare trust fund interest on their tax returns. The IRS provision does not require this, however.

SUNSET ADVISORY COMM'N, STAFF REPORT: TEX. FUNERAL SERVICES COMM'N, at 66 (2000). *See also* SUNSET ADVISORY COMM'N DECISIONS: TEX. FUNERAL SERVICES COMM'N, at 21-23 (2001).

You offer, though do not necessarily endorse, two arguments in support of a construction that the amendatory language of subsection (d) reaches insurance-funded funeral benefits contracts, in addition to trust-funded contracts. We will address each argument in turn.

First, it is suggested that, by inclusion of section 154.155 in the subchapter titled "General Provisions for Sales Contracts," the legislature intended that section to apply to both trust-funded and insurance-funded contracts. *See* Request Letter, *supra* note 2, at 2. We find this suggestion unpersuasive. Section 311.024 of the Government Code (the "Code Construction Act") provides that "[t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." TEX. GOV'T CODE ANN. § 311.024 (Vernon 1998). Thus, for example,

> while the headings and divisions of the Insurance Code might prove useful to the researcher seeking a particular statute, any inferences about the substantive limitations of the statute must be founded upon more than the mere placement or labeling of the provision within the Code.

*In re Hosek*, 136 B.R. 672, 673 (Bankr. W.D. Tex., 1991). Similarly, we believe that the mere fact that the legislature placed the text of section 154.155 of the Finance Code in the subchapter containing general provisions for sales contracts does not, by itself, necessarily make every clause of every section of that subchapter equally applicable to both trust-funded and insurance-funded contracts, at least if the clear meaning of the language at issue, as it is here, can apply only to one sort of contract.

Second, it is suggested that the legislative history of section 154.155 prior to the 2001 statutory amendment supports a construction applying the 2001 amendatory language to insurance-funded contracts. Specifically, it is argued that, because the predecessor statute of chapter 154, article 548b of the Revised Civil Statutes, provided in section 1A(e) that refunds due a purchaser upon cancellation of an insurance-funded contract "shall be handled as provided by Section 5(b) of this Act," and because section 5(b) of article 548b provided, *inter alia*, that a purchaser who cancelled a trust-funded contract after the first year was entitled to receive as a refund only the actual amounts paid in by the purchaser less an amount permitted to be retained by the seller, a purchaser of an insurance-funded contract who cancelled the contract after the first year also was entitled to a refund of the actual amounts paid. *See* Act of May 26, 1993, 73d Leg., R.S., ch. 808, § 1, 1993 Tex. Gen. Laws 3211, 3214, 3221 (predecessor to chapter 154). Again, we find this suggested argument unpersuasive. The argument presupposes that the refund language of subsection (d), prior to the 2001 amendment, applied to both trust-funded and insurance-funded contracts; it assumes that the inclusion of the language "except as provided by . . . Sections 154.205 [which applies to insurance-funded contracts] and 154.254 [which applies to trust-funded contracts]" in section 154.155(d) necessarily requires such a construction. *See* TEX. FIN. CODE ANN. § 154.155 (d) (Vernon Supp. 2002). A brief discussion of relevant legislative history of the predecessor statute to section 154.155 of the Finance Code supports the proposition that the refund language of subsection (d),

prior to the 2001 amendment, never applied to insurance-funded contracts; therefore, the amendatory language at issue could not either.

The language providing that "[t]he cancellation of an insurance-funded prepaid funeral benefits contract shall be handled as provided by Section 5(b) of this Act" was added to then article 548b in 1993. *See* Act of May 26, 1993, 73d Leg., R.S., ch. 808, § 1, 1993 Tex. Gen. Laws 3211, 3214. The same bill, in addition to adding a section title and renumbering the provisions to indicate that Section 5 of then article 548b of the Revised Civil Statutes applied to trust-funded contracts, added the following relevant language to subsection (b):

> (b)(1) [(5)] In the event a purchaser under a *trust-funded* contract should desire to cancel the contract prior to maturity, such cancellation may be accomplished by the *purchaser* [seller] giving *to the seller written* [fifteen days] notice *of cancellation on forms prescribed by the Department* [in writing to the Department, signed by the purchaser], and thereafter, *the* [upon written authorization from the Department, such] seller *within 30 days after the date of the cancellation notice shall* [may] withdraw *and pay to the purchaser* the funds in such depository being held for the purchaser's use and benefit; provided however, such purchaser shall be entitled to receive only the actual amounts paid in by him less the amounts permitted to be retained as provided in Subsection *(a)*(1) hereof. *The seller shall maintain copies of the cancellation forms for examination by the Department.* Purchaser or seller may make no partial cancellations for withdrawals.
>
> *(2) A purchaser of a trust-funded contract who elects to cancel the contract during the first year of the contract when payments required under the contract are current is entitled to receive 90 percent of the actual amounts paid in by the purchaser or the amounts deposited in trust with respect to the purchaser's contract, whichever is greater, regardless of the amount held in trust. A purchaser of an insurance-funded contract who elects to cancel the contract during the first year of the contract when payments required under the contract are current is entitled to receive the cash surrender value of the policy.*

*Id.* 1993 Tex. Gen. Laws at 3221 (added language is italicized). Thus the only language in section 5 of then article 548b governing cancellation of insurance-funded contracts was set forth in subdivision (2) and applied to cancellation of contracts during the first year. The two sentences of subdivision (2) were codified as Sections 154.205 and 154.254, respectively, in the nonsubstantive codification of the Finance Code in 1997. *See* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, §§ 1, 7, 1997 Tex. Gen. Laws 3091, 3394, 3395, 3603. The language in subdivision (1) of section 5 of

then article 548b that permitted a refund of amounts paid when a contract was cancelled after the first year and applied only, by its express terms, to trust-funded contracts was codified at what is now section 154.155 of the Finance Code. *See id.* 1997 Tex. Gen. Laws at 3392; TEX. FIN. CODE ANN. § 154.155 (Vernon Supp. 2002). Therefore, prior to its nonsubstantive codification, the refund language of section 5 that was codified as part of the new Finance Code at section 154.155 clearly applied only to trust-funded contracts. The inclusion of the "except for" language in subsection (d) that includes a reference to section 154.205 does not have the effect of making the language of the principal clause of the subsection applicable to insurance-funded contracts.

Therefore, we conclude that the amendatory language to section 154.155(d), Finance Code, enacted by the Seventy-seventh Legislature applies only to trust-funded prepaid funeral benefits contracts; it does not apply to insurance-funded prepaid funeral benefits contracts.

## S U M M A R Y

The amendatory language of section 154.155(d) of the Finance Code, which entitles a purchaser who cancels a prepaid funeral benefits contract to a refund that includes half of the earnings attributable to the payments made by the purchaser, applies only to trust-funded prepaid funeral benefits contracts; it does not apply to cancellations of insurance-funded prepaid funeral benefits contracts.

Yours very truly,

J O H N  C O R N Y N
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Jim Moellinger
Assistant Attorney General